UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

– against –

JONAH LUC

    *Defendant.*

**MEMORANDUM & ORDER**
25-cr-00273 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

Defendant Jonah Luc is charged in a two-count indictment with theft of government funds, in violation of Title 18, United States Code, § 641 ("Count One"), and aggravated identity theft, in violation of Title 18, United States Code, §§ 1028A(a)(1), 1028A(b), and 1028A(c)(1) ("Count Two"). *See* Indictment, ECF. No. 6. The Court has scheduled a jury trial to commence on June 1, 2026. *See* Minute Entry dated April 1, 2026. In advance of trial, the government timely submitted six motions *in limine* and defendant timely submitted five motions *in limine*. *See* Gov't's Mot.; Def's Mot.[1] For the reasons stated herein, the parties' motions are variously granted, denied, or reserved for later ruling. The Court will rule on the reserved motion *in limine* at or following the final pre-trial conference.

Separately, on May 14, 2026, defendant filed a motion to dismiss the indictment. Mot. to Dismiss, ECF No. 34. On May 18, the government filed its opposition. Opp'n to

---

[1] The Court hereinafter refers to the government's Mot. in Limine, ECF No. 26, as "Gov't's Mot."; defendant's Mot. in Limine, ECF No. 29, as "Def's Mot."; defendant's Resp. in Opp'n, ECF No. 31, as "Def's Opp'n"; the government's Resp. in Opp'n, ECF No. 32, "Gov't's Opp'n".

1

Mot. to Dismiss, ECF No. 45. Given that dismissal of the indictment would obviate the need for consideration of the parties' motions *in limine*, the Court addresses defendant's motion first.

## MOTION TO DISMISS

In his motion to dismiss, defendant argues that the indictment is duplicitous because Count One charges two crimes. Mot. to Dismiss 2–3.[2] Defendant's core argument is that stealing property is "an entirely different crime" than receiving property that has been stolen. Mot. to Dismiss 2. Because the indictment charges defendant with "embezzle[ing], steal[ing], purloin[ing] and convert[ing]" as well as "receiv[ing], conceal[ing] and retain[ing]" a check issued by the United States Department of the Treasury ("Check"), Indictment ¶ 1, defendant contends there is a risk of a non-unanimous verdict. Mot. to Dismiss 3. Defendant's motion is without merit.

I.    Legal Standard

On a pretrial motion to dismiss, "the Court accepts the allegations in the indictment as true and focuses on the legal sufficiency of the indictment itself, without ruling on the legal sufficiency of the evidence or contrary assertions of fact." *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 798 F. Supp. 2d 517, 522 (S.D.N.Y. 2011).[3] "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double

---

[2]    Throughout this Order, page numbers for docket filings generally refer to the page numbers assigned in ECF filing headers.

[3]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

jeopardy in a future prosecution based on the same set of events." *United States v. Bout*, 731 F.3d 233, 240–41 (2d Cir. 2013).

II.     Discussion

First, defendant's motion is untimely, as the deadline for pretrial motions was April 10, 2026. Minute Entry dated April 1, 2026; *see* Fed. R. Crim. P. 12(c)(3). While untimeliness may be excused for good cause shown, defendant has not attempted such a showing.

Moreover, defendant's motion fails on the merits. "The fact that the various methods of committing a single offense can be divided into two separate categories . . . does not create duplicity." *United States v. Daugerdas*, 837 F.3d 212, 226 (2d Cir. 2016). An indictment "may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has 'or,' and it will not be double." *Griffin v. United States*, 502 U.S. 46, 51 (1991); *see also United States v. Droms*, 566 F.2d 361, 363 (2d Cir. 1977) ("Fed. R. Crim. P. 7(c)(1) permits allegation in a single count that an offense has been committed in a multiplicity of ways; such a count is not duplicitous. It has been held, for example, that an indictment charging both 'accepting' and 'receiving' wagers in one count is not improper.").

Here, Count One "alleges a single crime," *Daugerdas*, 837 F.3d at 226, that is, theft of government funds, Indictment ¶ 1. The indictment is not duplicitous just because it "alleges that this crime was committed in many different ways." *Daugerdas*, 837 F.3d at 226.

And as conceded by defendant's motion, "duplicity does not necessarily require dismissal." Mot. to Dismiss 3 (quoting *United States v. Sturdivant*, 244 F.3d 71, 79 (2d Cir. 2001)). That is especially true where, as here, any "prejudice to [] defendant can be

avoided . . . by a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction." *Sturdivant*, 244 F.3d at 79.

Accordingly, defendant's motion to dismiss is DENIED.

## MOTIONS IN LIMINE

### Legal Standard

A district court's inherent authority to manage the course of trials encompasses ruling on motions *in limine. Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A district court should exclude evidence on a motion *in limine* "only when the evidence is clearly inadmissible on all potential grounds." *Picard v. Sage Realty*, Nos. 20-cv-10109, 20-cv-10057, 2021 WL 5826295, at *2 (S.D.N.Y. Dec. 8, 2021). "Courts considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context." *United States v. Morel*, 751 F. Supp. 2d 423, 428 (E.D.N.Y. 2010). Because a ruling on a motion *in limine* "is subject to change as the case unfolds," the district court's ruling "constitutes a preliminary determination in preparation for trial." *Busher v. Barry*, No. 14-cv-04322, 2019 WL 6895281, at *2 (S.D.N.Y. Dec. 18, 2019); *Luce*, 469 U.S. at 41–42.

The Federal Rules of Evidence provide the framework for determining the admissibility of evidence. "As a general matter, all relevant evidence is admissible . . . unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). "[E]vidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action

4

more probable or less probable than it would be without the evidence.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) (quoting Fed. R. Evid. 401). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice," *United States v. Bourne*, No. 08–cr–00888, 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23, 2011) (quoting Fed. R. Evid. 403), and irrelevant evidence is never admissible, Fed. R. Evid. 402.

## Discussion

### I.    Government's Motions in Limine

The government has filed motions *in limine* to: (1) permit the government to introduce defendant's Instagram stories as well as the credit cards found in his apartment as direct evidence, or alternatively, evidence pursuant to Rule 404(b); (2) "preclude argument that evidence was obtained unlawfully"; (3) "permit the government to introduce [] defendant's prior conviction for the limited purpose of providing context to the probation search of [] defendant's bedroom"; (4) preclude "improper use of agent reports to impeach"; (5) "preclude evidence or argument concerning possible punishment and collateral consequences"; and (6) "preclude questioning focused on the propriety of the government's investigation." Gov't's Mot. 10–26.

### A.    "Other Act" Evidence

Evidence of uncharged criminal activity is typically governed by Rule 404(b), which prohibits the introduction of evidence of past bad acts for the purpose of proving a defendant's propensity to commit crimes. *See* Fed. R. Evid. 404(b). However, evidence of uncharged criminal activity is not considered other-acts evidence—and may be admitted as direct evidence of the charged offense—if it (1) "arose out of the same transaction or series of transactions as the charged offense," (2) "is inextricably intertwined with the

5

evidence regarding the charged offense," or (3) "is necessary to complete the story of the crime on trial." *United States v. Matos*, No. 22-00691, 2024 WL 1003292, at *1 (2d Cir. Mar. 8, 2024). Such evidence is admissible as relevant under Rule 401 if it "tend[s] to prove the government's case" by, for example, "provid[ing] background for the events alleged in the indictment." *United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009); *see also* Fed. R. Evid. 401.

Alternatively, evidence of uncharged criminal activity may be admissible under Rule 404(b) if offered for certain purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit evaluates Rule 404(b) evidence under an "inclusionary approach," and will allow its admission for any proper purpose other than to show a defendant's criminal propensity. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). Nevertheless, the inclusionary approach "does not obviate the need to identify the fact or issue to which the evidence is relevant." *United States v. Miller*, 641 F. Supp. 2d 161, 165 (E.D.N.Y. 2009) (quoting *United States v. Mercado*, 573 F.3d 138, 143–44 (2d Cir. 2009)). In other words, a court must be able to identify a clear connection between the prior act evidence and an issue that is disputed at trial. *Id*.

Like other kinds of evidence, other act evidence is subject to evaluation under Rule 403. Accordingly, the Court must determine whether the probative value of such evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion. Fed. R. Evid. 403; *see United States v. Blanco*, 811 F. App'x 696, 705 (2d Cir. 2020) ("Of course, a trial court may in any event reject the admission of any relevant evidence that does not satisfy Rule 403 of the Federal Rules of Evidence."); *United States v. Figueroa*, No. 23-cr-00161, 2023 WL 8258735, at *3 (S.D.N.Y. Nov. 29, 2023). "The district court has 'wide discretion'

6

in determining what falls within the scope of . . . Rule 404(b)." *Matos*, 2024 WL 1003292, at *1.

> B.      Introduction of Defendant's Instagram Stories

> 1.      *Direct Evidence*

The government seeks to introduce several Instagram stories from defendant's account as direct evidence of the charged acts—theft of government funds and aggravated identity theft. Gov't's Mot. 10, 13–16. Several of these stories appear to be related to defendant's theft of the Check. For example, Exhibit A depicts a mobile check deposit confirmation page. Ex. A, ECF No. 26-1. An emoji covers most of the screen but the numbers "28" and "404" are visible at the edge of the screen. Ex. A. The government notes that the Check was for $1,474.28, and Individual-1's bank account ends in -2404. Gov't's Mot. 8.[4] Similarly, Exhibit B depicts defendant logged in to Individual-1's bank account ending in -2404. Ex. B, ECF No. 26-2. Finally, Exhibit C shows defendant with a large amount of cash in front of an ATM. Ex. C, ECF No. 26-3. The government says that this video matches surveillance video showing defendant withdrawing $670 from Individual-1's bank account from an ATM. Gov't's Mot. 14. In sum, the government contends that these stories are direct evidence showing that defendant had access to Individual-1's bank account, where the Check was fraudulently deposited, and that he withdrew the money soon after the deposit. Gov't's Mot. 14–15.

Other of defendant's Instagram stories, however, appear unrelated to his alleged theft of the Check. Two such posts show defendant holding different credit cards, Ex. D, ECF No. 26-4; Ex. E., ECF No. 26-5, and one shows defendant with a large amount of cash,

---

[4]      "Individual-1" is the person to whom the Check was endorsed and the person whose bank account defendant allegedly used to deposit and withdraw funds from the Check.

Ex. F, ECF No. 26-6. Each post also contains text, for example, "KICK EMM DON'T CLIP EMM DOING ALL BANKS," Ex. D, and "IF U HAVE CHASE CITI SANTANDER PNC WELLS CAP1 KICK IT EASY MONEY FOR THE SUMMER AND FALL," Ex. F. Nonetheless, the government asserts that these Instagram stories are admissible as direct evidence because they "demonstrate that [] defendant's theft of the Check was not an isolated act" and because they will help the jury understand "how the charged crime came about and defendant's role in it." Gov't's Mot. 15.

The Court finds that Exhibits A–C are admissible as direct evidence because they "ar[i]se out of the same transaction or series of transactions as the charged offense." *Matos*, 2024 WL 1003292, at *1. The Instagram stories depict defendant using what appears to be Individual-1's bank account to deposit a check and then withdraw a large sum of money from an ATM. *See* Exs. A–C. Moreover, the government asserts that Ex. C corroborates evidence from surveillance video footage taken on the same day showing defendant withdrawing money from Individual-1's bank account. Gov't's Mot. 14–15, *see* Ex. C. This evidence is relevant to the charged crime because it gives "coherence to the basic sequence of events" underlying the charged conduct. *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). Moreover, the evidence is highly probative of the charged crime because it tends to show defendant's knowledge of how to use another person's identity to cash a stolen check.

The Instagram stories contain more, however, than direct evidence alone. Each post contains text that could suggest unrelated financial crimes. For example, Ex. A says "KICK ALL BANKS LETS GET THIS EASY MONEY," and Ex. B. says, "If ya shyt a low limit we still green but if ya shyt high it's even better kick ya bank." This text suggests that defendant could be involved in financial crimes unrelated to the ones charged and may lead jurors to

believe that defendant is simply the type of person who commits financial crimes. Such an inference would be substantially prejudicial and would outweigh the limited probative value that the superimposed text provides. Indeed, defendant is not charged with conspiracy. "A district court may not freely admit evidence of conduct simply because it relates to the charged crimes." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022). Thus, the superimposed texts on Exhibits A–C must be redacted before the government publishes the exhibits to the jury.

Exhibits D–F are inadmissible for similar reasons. These exhibits, which do not depict defendant engaging in any of the charged conduct, are not "part of the same transaction or series of transactions" as the charged offense. *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000). Indeed, the exhibits depict defendant with debit cards, Exs. D, E, and cash strewn about his person, Ex. F. None contain indicia of the crime charged in the Indictment, which involved a specific check, banking account, and transaction.

Nor are these acts "inextricably intertwined" with the charged conduct. *Carboni*, 204 F.3d at 44. The government alleges that defendant stole the Check and deposited it into an account by pretending to be John Doe. The charged crimes are therefore straightforward and "the jury does not need to hear about additional uncharged [acts] to understand the evidence." *United States v. Donovan*, 577 F. Supp. 3d 107, 115 (E.D.N.Y. 2021); *see also United States v. Martoma*, No. 12-cr-00973, 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) ("Courts have not found charged and uncharged conduct inextricably intertwined where the charged crimes are straightforward and may be fully understood without reference to the uncharged conduct."). That defendant made some of these stories around the same time as the charged crime makes no difference; it simply

reflects "the transactions the [g]overnment chose to charge and those it did not." *Donovan*, 577 F. Supp. 3d at 115.

Finally, the government does not explain how Exhibits D–F are "necessary to complete the story" of the charged transactions. *Carboni*, 204 F.3d at 44. The "story" is that defendant unlawfully obtained the Check and fraudulently signed it over to Individual-1 so that defendant could use Individual-1's bank account to withdraw the money. *See* Gov't's Mot. 8–9. While the proffered evidence "may tend to show that [defendant] was engaged in a pattern of activity" involving debit cards and large amounts of cash, "knowledge of that activity does not assist in understanding the charged crimes." *United States v. Newton*, No. S101-cr-635, 2002 WL 230964, at *3 (S.D.N.Y. Feb. 14, 2002); *see Donovan*, 577 F. Supp. 3d at 115 ("Evidence of additional discrete, uncharged transactions on different dates from those alleged . . . is hardly necessary to *clarify* the case for the jury.").

Accordingly, the government's motion is GRANTED in part and DENIED in part. While Exhibits A–C are admissible as direct evidence, the superimposed text in Exhibits A–C must be redacted. Exhibits D–F are inadmissible as direct evidence.

### 2.    *FRE 404(b)*[5]

Alternatively, the government asserts that defendant's Instagram stories are admissible to show "knowledge of the fraudulent nature of his conduct" and "intent to deposit illicit funds into others' bank accounts." Gov't's Mot. 17. The government cites "the sheer number of [] Instagram stories . . . in the same timeframe as the instant offense" as probative of defendant's knowing and purposeful conduct. Gov't's Mot. 17.

---

[5]    Because the Court grants the government's motion to introduce Exhibits A–C as direct evidence, it does not address the admissibility of Exhibits A–C under Rule 404(b).

Upon review of Exhibits D–F, the Court fails to understand how this evidence shows knowledge of or intent to commit the charged offenses. Indeed, these stories do not reference checks at all, let alone the specific Check that defendant is charged with unlawfully obtaining. Rule 404(b) "permits the government to offer other act evidence to show knowledge or intent only when such evidence is sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act." *Zhong*, 26 F.4th at 551. It is not reasonable to infer that defendant knew how to or intended to steal checks or commit identity theft based on Instagram stories of him holding debit cards and cash. "[O]ther-act evidence [that] does not provide a reasonable basis for inferring knowledge or intent . . . should be rejected . . . ." *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011).

Moreover, whether defendant had the knowledge and intent to commit the charged crimes is evidenced by exhibits A–C, which bear much more directly on the crimes with which defendant is charged. *See supra* § I.B.1.

The government's motion to admit Exhibits D–F under Rule 404(b) is DENIED.

C.     Introduction of the Credit Cards Found in Defendant's Apartment

1.     *Direct Evidence*

The government argues that the credit cards recovered during the New York City Probation officers' search of defendant's apartment are similarly admissible as direct evidence of the charged crimes. Gov't's Mot. 16. The government claims that the cards are "inextricably intertwined" with the charged crime because, "like the Check, [] defendant provided inconsistent statements . . . about why they were in [] defendant's possession." Gov't's Mot. 16. The credit cards are also necessary to "complete the story of the crime on trial," the government says, because they "were found among [] defendant's possessions"

11

and "implicate the identities of third parties." Gov't Mot. 16. Neither justification is persuasive.

Providing inconsistent statements about two unrelated topics does not make them inextricably intertwined. Indeed, if credit cards and checks were so closely related, it stands to reason that defendant would be charged with credit card theft as well. As discussed *supra* § I.B.1, the crimes charged here are straightforward to understand, and the government "has not explained why details of the uncharged [crimes] are necessary to understand the charged [ones]." *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007).

Second, the government can easily complete the story of the crime on trial without mentioning items *other than the Check* that were recovered in the search of defendant's apartment. As currently represented, the government has not made clear the relevancy of the credit cards to its theory of the case.

Therefore, the government's motion to introduce as direct evidence the credit cards recovered in the search of defendant's apartment is DENIED.

### 2.    FRE 404(b)

The government next argues that the credit cards are admissible to show knowledge in the event that "defendant argue[s] that he did not know that the Check belonged to a real person[.]" Gov't Mot. 18.

"When [a] defendant disavows awareness that a crime was being perpetrated" and "the government bears the burden of proving the defendant's [knowledge]," evidence of prior similar acts "may be admitted for the purpose of proving knowledge." *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990); *see United States v. Camara*, 485 F. App'x 457, 459 (2d Cir. 2012) ("Knowledge became an issue when [the defendant] argued that

12

he did not know the credit cards belonged to real people—an element required to be proven for aggravated identity theft under 18 U.S.C. § 1028A[.]”) (summary order).

Here, even if defendant argues that he did not know the Check belonged to a real person, the fact that he possessed several credit cards bearing names of other people is minimally probative of that knowledge. Unlike cases involving a defendant's “prior participation in theft of the identities of real individual[s],” *United States v. Alcantara*, No. 13-cr-00119, 2015 WL 13215025, at *3 (S.D.N.Y. Jan. 28, 2015), *aff'd*, 674 F. App'x 27 (2d Cir. 2016), mere possession of credit cards bearing other peoples' names is not “[e]vidence of a defendant's participation in other, similar frauds,” *United States v. Watts*, No. S3 09-cr-62, 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011). An exact fit is not required, but other act evidence offered to show knowledge must be “sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of [that] knowledge.” *Cadet*, 664 F.3d at 32 (2d Cir. 2011); *see United States v. Matos*, No. 18-cr-00327, 2026 WL 709803, at *2 (S.D.N.Y. Mar. 13, 2026) (“[E]vidence showing [the defendant] and his co-conspirators had previously committed crimes together, including an attempted robbery, demonstrated the mutual ‘trust’ that led the others to invite [the defendant] to participate in the planned robbery charged in the indictment. . . . [and] rebutted one of [the defendant]'s defenses—that he did not knowingly and intentionally join the conspiracy.”). Put differently, simple possession of the cards, without any indication—such as a conviction, or even an allegation—that the possession was linked to an identity theft crime is not particularly probative of defendant's knowledge that the Check belonged to a real person. *See Watts*, 2011 WL 167627, at *6 (“Here, the fact that [the defendant] was found through his 2001 tax conviction to have engaged in various financial transactions to hide illegal funds from the IRS is highly relevant to whether he

13

acted with similar knowledge and intent in engaging in various financial transactions such as those detailed in the present case.").

That is not to say a defendant must be convicted of the "other act" for evidence of that act to be admissible. *See United States v. Graham*, 51 F.4th 67, 82 (2d Cir. 2022) (admitting as other act evidence an uncharged "scheme" whereby the defendant "instructed a co-conspirator . . . to etch markings on checks in certain colors of ink so that they could be drawn against closed checking accounts to cover [the co-conspirator]'s debts"). But here, it is not clear that the "presence of additional financial instruments in the names of people other than [] defendant," Gov't's Mot. 18, establishes defendant's knowledge that any of the cards themselves belonged to a real person—much less the Check.

Further, evidence that defendant was in possession of credit cards not bearing his name could be highly prejudicial. The jury could infer that defendant's possession of these credit cards suggests that he is the type of person who engages in financial crime.

Given the limited probative value of defendant's possession of the credit cards and the high potential for unfair prejudice, the government's motion is DENIED.

D.      Preclusion of Argument That Evidence Was Obtained Unlawfully

The government argues that defendant should be "precluded from arguing the search of his apartment and seizure of items therein was unlawful or otherwise improper." Gov't's Mot. 19. Given the Court's Order on defendant's motion to suppress, which found that the search of defendant's residence was supported by reasonable suspicion, Order 13,

14

ECF No. 33 the government's motion is DENIED as moot without prejudice to renewal at trial.[6]

### E.   Introduction of Defendant's Prior Conviction

The government states that it "anticipates introducing limited facts regarding [] defendant's status on probation" and "will endeavor to reach an agreement with defense counsel" as to the scope of those facts. Gov't Mot. 20. In the absence of an agreement, the government requests that "the Court allow limited evidence of the fact that [] defendant, having been previously convicted of a crime, was on probation which permitted a search of his bedroom by the NYC Probation officers" because that evidence is necessary to "lay[] the foundation for NYC Probation's discovery of the Check and [] defendant's knowing possession of John Doe's identity." Gov't Mot. 20.

Defendant counters that reference to the fact that he was on probation at the time of arrest and that the search was conducted by a Probation officer is unnecessary because the officer can be identified generically as a "law enforcement officer." Def's Opp'n 4–5. Moreover, defendant asserts that evidence of his probationary status would be highly prejudicial because it would lead jurors to think that he "is more likely to have committed this offense because he has a recent conviction for some other offense." Def's Mot. 3.

The fact that defendant was on probation at the time the Probation officers searched his apartment is irrelevant to the question of whether or not he committed the charged acts. *See* Fed. R. Evid. 401. His probationary status is not "critical background" without

---

[6]   The Court construes defendant's lack of objection to the government's motion, Def's Resp. 4, as an indication that he does not intend to argue "issues that have been litigated and decided." *United States v. Motovich*, No. 21-cr-00497, 2024 WL 3303723, at *8 (E.D.N.Y. July 2, 2024).

which the search of his apartment "would otherwise not make sense." *Doe v. Lima*, No. 14-cv-02953, 2020 WL 728813, at *7 (S.D.N.Y. Feb. 13, 2020) (admitting evidence of parolee status where it established the reason defendant was subject to the separation orders he was challenging). Similarly, evidence about *who* conducted the search of defendant's apartment does not have "any tendency to make a fact [in the government's case] more or less probable than it would be without [that] evidence." Fed. R. Evid. 401.

The government's reliance on *United States v. Esposito* is misplaced. There, the defendant's prior conviction could not be separated from the charged crime. No. 20-2143-cr, 2021 WL 5492935, at *2 (2d Cir. Nov. 23, 2021); *see* Gov't's Mot. 20–21. In *Esposito*, the defendant was charged with conspiracy to participate in racketeering and to commit extortion. *Id*. at *1. The government sought to introduce evidence of conversations that the defendant had with its witness, the president of a labor union, about giving him a job. *Id*. at * 2. One of the consequences of the defendant's prior conviction was that he could not work for a labor union for a number of years. *Id*. As the effective time period for that ban was about to elapse, the defendant approached the government's witness asking for a job. *Id*. During these conversations, the witness told the defendant that he would not hire the defendant because the defendant's prior conviction would be an "immediate red flag." *Id*. One of the defendant's co-conspirators then proceeded to exert pressure on the government's witness to give the defendant a job notwithstanding his prior conviction. *Id*. Thus, the defendant's prior conviction was directly linked to the charged crime because the prior conviction was, at least in part, the reason that the defendant and his co-conspirator were extorting the government's witness in the first place. Put another way, the prior conviction likely played a role in why the defendant engaged in the charged crime.

16

Here, by contrast, defendant's prior conviction is not a reason he would have engaged in the crimes charged, and does not otherwise provide necessary background to the charges. Thus, the probative value of this evidence is limited. In light of the serious potential prejudice posed by the possibility that jurors might convict defendant of the charged offenses based on assumptions about defendant's prior conviction or the fact that he was on probation at the time of the search, the Court concludes this evidence should not be admitted.

To the extent the government intends to elicit testimony from a Probation officer, that officer can identify themselves as a "law enforcement officer." Further, the parties may submit a proposed jury instruction addressing any concerns regarding the reason for the officers' presence.

Accordingly, the government's motion is DENIED.

### F. Preclusion of Agent Reports Used for Improper Impeachment Purposes

The government seeks to preclude defendant from using agent reports for impermissible impeachment purposes. Gov't's Mot. 22. Given defendant's representation that he is aware of the Rules of Evidence, Def's Opp'n 5, and thus presumably will not use the agent reports for improper impeachment purposes, the government's motion is DENIED as moot without prejudice to renewal at trial.

### G. Preclusion of Evidence or Argument Concerning Possible Punishment or Collateral Consequences

The government seeks to preclude defendant from making any argument concerning punishment or potential collateral consequences that may result from defendant's conviction. Gov't's Mot. 24. "Information regarding the consequences of a verdict is irrelevant to the jury's task." *United States v. Jadusingh*, No. 18-cr-00257, 2020

17

WL 207950, at *3 (E.D.N.Y. Jan. 14, 2020) (quoting *Shannon v. United States*, 512 U.S. 573, 579 (1994)). Accordingly, the government's motion is GRANTED.

### H. Preclusion of Questioning Focused on the Propriety of the Government's Investigation

Finally, the government seeks to preclude defendant from making any argument related to the government's investigation overall, rather than the evidence (or lack thereof) put forward at trial. Given defendant's representation that he is aware of what issues are properly before the jury, Def's Opp'n 5, and thus presumably will limit his arguments to the facts presented at trial, the government's motion is DENIED as moot without prejudice to renewal at trial.

### II. Defendant's Motions in Limine

Defendant has filed motions *in limine* to: (1) in the event that he chooses to testify, preclude the government "from questioning him about his prior felony conviction"; (2) "preclude reference to the fact that [he] was on probation at the time of his arrest . . . and that the search of his home was conducted by a probation officer"; (3) "preclude evidence of [his] alleged gang membership, or gang-related activities"; (4) "preclude any reference to other items seized from [his] residence, including credit cards that allegedly did not belong to [him]"; and (5) "preclude victim impact testimony by 'Individual-1,' the recipient of the U.S. Treasury check at issue in this case." Def. Mot. 1–5.[7]

### A. Preclusion of Questioning on Prior Felony Convictions

Defendant seeks to preclude the government from questioning him on his prior felony convictions should he choose to testify. If a defendant in a criminal case testifies,

---

[7]    Although defendant seeks to preclude victim impact testimony from "Individual-1," the Court construes this motion as seeking to preclude victim impact testimony from "John Doe," the person whose name appears on the Check.

18

his character for truthfulness may be impeached by evidence of a prior conviction under certain circumstances. As relevant here, evidence of a prior conviction for a crime punishable by imprisonment for more than one year "must be admitted, subject to Rule 403, if the probative value of the evidence outweighs its prejudicial effect to the defendant." Fed. R. Evid. 609(a)(1)(B). A Court weighing the probative versus prejudicial value of impeaching a defendant with his prior conviction considers five factors: "(1) the impeachment value of the prior crimes, (2) the date of the conviction and the [d]efendant's subsequent history, (3) the degree of similarity between the past crimes and this crime, (4) the centrality of the [d]efendant's credibility in this case, and (5) the importance of the [d]efendant's testimony." *United States v. Brown*, 606 F. Supp. 2d 306, 311–12 (E.D.N.Y. 2009).

If a district court permits evidence of a conviction to impeach a criminal defendant under Rule 609(a)(1), it must presumptively allow inquiry into the "essential facts" of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed. *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005). Because "different felonies . . . bear on credibility to varying degrees[,] [d]istrict courts must . . . undertake an individualized balancing analysis under Rule 609(a)(1) before excluding evidence of the statutory name of a [defendant]'s crime." *Id.*

### 1.     *The impeachment value of the prior crimes*

If defendant testifies, the government seeks to impeach him with his 2023 conviction of conspiracy to engage in a crime, in violation of New Jersey Criminal Code 2C:5-2A(1), and shoplifting, in violation of New Jersey Criminal Code 2C:20-11B(1). Gov't's Opp'n 7.

19

"Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *Estrada*, 430 F.3d at 617. And the Second Circuit has recognized that theft crimes "rank[] high on the scale of probative worth on credibility." *Id*. at 618. Accordingly, defendant's prior conviction for shoplifting, "while not quite [a] crime[] of dishonesty or false statement, do[es] reflect lack of credibility." *Id*. at 618. Therefore, this factor weights in favor of allowing impeachment evidence of defendant's prior conviction.

### 2. The date of the conviction and defendant's subsequent history

"[T]he age of a prior conviction . . . reflect[s] somewhat on its value as an index of defendant's current credibility." *United States v. Crumble*, No. 18-cr-00032, 2018 WL 2016852, at *7 (E.D.N.Y. May 1, 2018). Here, defendant's conviction is quite recent. Because "convictions have more probative value as they become more recent," this factor also weighs in favor of allowing evidence of the prior conviction. *Brown*, 606 F. Supp. 2d at 315 (quoting *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)).

### 3. The degree of similarity between the past crimes and this crime

While defendant's prior conviction for shoplifting and the instant charges are "at bottom, different crimes," *United States v. White*, 312 F. Supp. 3d 355, 360 (E.D.N.Y. 2018), they are not so different because shoplifting is a form of theft. "[S]imilarity of past and present offenses weighs heavily against the use of prior criminal convictions for impeachment purposes," especially where, as here, the "prior conviction . . . involves precisely the same activity as the present offense." *Brown*, 606 F. Supp. 2d at 314; *see id*. at 315. Allowing impeachment evidence of defendant's prior convictions would thus create

a high risk of unfair prejudice as the jury may infer unfairly that defendant has a propensity to steal. Therefore, this factor weighs against allowing evidence of the prior conviction.

       *4.*      *The centrality of defendant's credibility in this case and the importance of defendant's testimony*

The court considers the fourth and fifth factors together because they are related in this case. The government contends that, if defendant testifies, his credibility will be central to the jury's determination of the case because the "case may turn on" whether the jury believes the version of events offered by the Probation officer who found the Check or the version offered by defendant. Gov't's Opp'n 10. The government argues that it would be unfair and misleading to permit defendant to take the stand and appear "pristine." Gov't's Opp'n 10.

In support of a finding that these factors weigh in favor of admission, the government cites to the Second Circuit's decision in *United States v. Ortiz*, 553 F.2d 782, 785 (2d Cir. 1977). *Ortiz,* however, is distinguishable from this case. There, the government's only eyewitness, a confidential informant, had an extensive criminal record, which was "thoroughly exploited on cross-examination," and the witness was "even impeached on cross-examination on the basis of arrests." *Id*. Because the case would have been "narrowed to the credibility" of that government witness and the defendant if he chose to testify, the Second Circuit found that it "would have been unfair and misleading to the jury" to "have allowed defendant, if he chose to take the stand, to appear pristine." *Id.*

By contrast, here there is no indication that the government's witnesses, presumably law enforcement officers, will have their credibility undermined by the

21

introduction of prior convictions or other impeachment evidence. Indeed, defense counsel stated as much at the suppression hearing.

Moreover, this is not a case where "there is little other documentary or supporting evidence and success at trial probably hinges entirely on [defendant's] credibility with the jury." *United States v. Vasquez*, 840 F. Supp. 2d 564, 572 (E.D.N.Y. 2011) (quoting *Jones v. City of New York*, No. 98-cv-06493, 2002 WL 207008, at *3 (S.D.N.Y. Feb. 11, 2002)). As discussed *supra* § I.B.1, several of defendant's social media posts will be offered as direct evidence of the charged crimes.

Accordingly, these factors weigh against allowing evidence of the prior conviction.

*    *    *

In sum, factors one and two weigh in favor of allowing the use of defendant's prior conviction as impeachment evidence, and factors three, four, and five weigh against allowing the use of such evidence. And given the similarity between the prior convictions and the charged offense and correspondingly high potential that the jury will draw improper inferences from those prior convictions, the Court finds that the third factor is entitled to particularly heavy weight. Therefore, defendant's motion to preclude questioning on defendant's prior convictions is GRANTED.

### B.    Preclusion of Reference to Probationer Status

Defendant seeks to preclude any reference to his probationer status. For the reasons described in the Court's ruling denying the government's motion to introduce evidence of defendant's prior conviction, *supra* § I.E, defendant's motion is GRANTED.

22

C.      Preclusion of References to Gang Membership or Gang-Related Activities

Defendant seeks to preclude the government from offering any evidence of defendant's alleged gang affiliation. Def's Mot. 3–4. Given the government's representation that it does not intend to introduce evidence of defendant's gang membership or affiliation, Gov't's Opp'n 6–7, defendant's motion is DENIED as moot without prejudice to renewal at trial.

D.      Preclusion of Reference to Items Seized from Defendant's Residence

Defendant seeks to preclude the government from offering evidence of the items seized from defendant's residence other than the Check, including defendant's statements about those items. Def's Mot. 4–5. For the reasons described in the Court's ruling denying the government's motion to introduce evidence of the credit cards seized at defendant's residence, *supra* § I.C, defendant's motion as to the items is GRANTED. The Court will issue a ruling on the admissibility of defendant's statements in advance of trial.

E.      Victim Impact Testimony

Finally, defendant seeks to preclude the victim in this case, John Doe, from testifying about how the theft of his check impacted him. Def's Mot. 5. The Court will issue a ruling on this request in advance of trial.

**CONCLUSION**

For the foregoing reasons defendant's motion to dismiss is DENIED. The government's motions *in limine* are GRANTED in part and DENIED in part and defendant's motions *in limine* are GRANTED in part and DENIED in part. The Court will rule on the remaining motions *in limine* for which the Court has not yet issued a decision in advance of the trial.

23

**SO ORDERED.**

> */s/ Natasha C. Merle*
> NATASHA C. MERLE
> United States District Judge

Dated:          May 24, 2026
                Brooklyn, New York